## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **SAMUEL KELLY** | **CIVIL ACTION** |
| **VERSUS** | **NO. 14-2282** |
| **STATE OF LOUISIANA** | **SECTION "R"(4)** |

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

## I. Federal Procedural Background

The petitioner, Samuel Kelly, is a convicted inmate housed in the Louisiana State Penitentiary in Angola, Louisiana. He filed this petition for habeas corpus under 28 U.S.C. § 2254 based on an alleged *Brady* violation.[2] In his petition, Kelly alleged that the State withheld critical evidence that would have disclosed that one of the prosecution witnesses, Derrick Dunbar, was coerced into falsely testifying against Kelly and his co-defendants. Kelly later asserted to this Court that he had obtained a copy of an affidavit from Dunbar, in which Dunbar attested that he was threatened by the State and gave false testimony at Kelly's state criminal trial.[3]

---

[1] Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2] Rec. Doc. No. 3.

[3] Rec. Doc. No. 13.

As a result, on July 1, 2015, the District Court stayed the matter to allow Kelly to exhaust state court review of his claim as it related to the newly discovered evidence/affidavit.[4]  Since that time, Kelly has been allowed to reopen the case on the finding by the District Judge that Kelly exhausted state court review related to the affidavit as newly discovered evidence.[5]  The matter was referred to the undersigned for determination and issuance of a report and recommendation. After supplemental briefing, this Report and Recommendation follows.

## II.    <u>State Court Factual and Procedural Background</u>

On August 13, 1998, Kelly and two co-defendants, Nathaniel Culverson and Houston Jackson, were indicted by a Jefferson Parish Grand Jury for the second degree murder and conspiracy to commit armed robbery.[6]  They each entered a plea of not guilty to the charges on September 9, 1998.[7]

The record reflects that, Jennifer Luttrell was the manager of the Chili's restaurant on West Esplanade Avenue in Kenner, Louisiana, when she was shot and killed in the early morning hours of December 21, 1997.[8]  Luttrell had worked the evening shift on December 20, 1997, which ran from 3:30 p.m. until closing that night.  The restaurant alarm records indicate that Luttrell closed the restaurant and set the alarm at 1:54 a.m. on December 21, 1997.

---

[4]Rec. Doc. No. 17.

[5]Rec. Doc. No. 21.

[6]St. Rec. Vol. 1 of 17, Indictment, 8/13/98; Grand Jury Return, 8/13/98.

[7]St. Rec. Vol. 1 of 17, Minute Entry (Kelly), 9/9/98; Minute Entry (Culverson), 9/9/98; Minute Entry (Jackson), 9/9/98.

[8]The facts were taken from the published opinion of the Louisiana Fifth Circuit Court of Appeal addressing the consolidated direct appeals of Kelly and his co-defendants.  *State v. Jackson*, 783 So.2d 482, 486 (La. App. 5th Cir. 2001); St. Rec. Vol. 3 of 17, 5th Cir. Opinion, 00-KA-221 c/w 00-KA-222 c/w 00-KA-223, pp. 2-3, 3/15/01.

Between 1:54 a.m. and 1:55 a.m., Honeywell, the alarm monitoring company, received three alarms.  The first alarm was set off by the interior infrared motion detector, the second alarm was set off by the opening of an interior door, and the third alarm was triggered by the opening of an exterior door.  Brown stated that all three alarms were restored, meaning that whatever caused the alarms to go off went back to a normal condition, such as when an open door is closed and the alarm sensors reconnect.

Between 2:15 and 2:20 a.m., the regular cleaning crew, Frank and Bonnie Kerner, arrived to clean the Chili's.  Frank Kerner immediately noticed that Luttrell's car was parked at an unusual angle in the parking lot.  As he approached the door of the restaurant, he saw papers scattered on the floor inside and knew something was wrong.  Once inside, he found Luttrell on the floor bleeding but still alive.  Despite medical attention, Luttrell died of a gunshot wound to the back of her head.

When Kenner City Police officers arrived, they could find no signs of forced entry into the restaurant.  They noticed that Luttrell was still wearing her jewelry, including her wedding ring, earrings, and a gold chain.  Her purse was on the serving counter and her keys were next to her on the floor.  There also was no money missing from the restaurant safe.

The Kenner City Police interviewed all of the Chili's employees including Culverson, who was a cook at the restaurant who had worked a double shift on December 20 ending with the evening shift at 10:52 p.m.  He became a suspect when his statement to Detective Michael Cunningham conflicted with information in the managers' "red book," which was used by the shift managers to communicate with each other regarding activities or incidents occurring during each shift.  Culverson told police that he had not had any disagreement with Luttrell during his two

shifts on December 20. However, Luttrell's entry in the red book indicated that she had problems with Culverson and another employee during the evening shift.

Over the next few months, Detective Cunningham learned that Culverson and Kelly had planned to rob the restaurant and that Jackson was involved in the plan. He obtained information that they intended to rob the restaurant by holding a gun to the manager's head and forcing her to open the safe. On April 3, 1998, Cunningham obtained arrest warrants for all three defendants.

Kelly and his co-defendants were jointly tried before a jury on October 28 and November 2 through 7, 1998, and were found guilty as charged on both counts.[9] At a hearing held December 2, 1998, the state trial court sentenced each defendant to serve consecutive sentences of life in prison for second degree murder and for the conspiracy to commit armed robbery, Kelly and Jackson received 5 years in prison and Culverson received 10 years in prison, all without benefit of parole, probation, or suspension of sentence.[10] Jackson and Culverson later received enhanced

---

[9]St. Rec. Vol. 1 of 17, Trial Minutes, 10/28, 1998; Trial Minutes, 11/2/98; Trial Minutes, 11/3/98; Trial Minutes, 11/4/98; Trial Minutes, 11/5/98; Trial Minutes, 11/6/98; Trial Minutes, 11/7/98; Jury Verdict (Count 1, Kelly), 11/7/98; Jury Verdict (Count 2, Kelly), 11/7/98; Jury Verdict (Count 1, Culverson), 11/7/98; Jury Verdict (Count 2, Culverson), 11/7/98; Jury Verdict (Count 1, Jackson), 11/7/98; Jury Verdict (Count 2, Jackson), 11/7/98; St. Rec. Vol. 10 of 17, Trial Transcript, 11/2/98; St. Rec. Vol. 11 of 17, Trial Transcript (continued), 11/2/98; Trial Transcript, 11/3/98; St. Rec. Vol. 12 of 17, Trial Transcript (continued), 11/3/98; Trial Transcript, 11/4/98; Trial Transcript, 11/5/98; St. Rec. Vol. 13 of 17, Trial Transcript (continued), 11/5/98; Trial Transcript, 11/6/98; St. Rec. Vol. 14 of 17, Trial Transcript (continued), 11/6/98; Trial Transcript, 11/7/98; St. Rec. Vol. 15 of 17, Trial Transcript (continued), 11/7/98.

[10]St. Rec. Vol. 1 of 17, Sentencing Minutes (Kelly), 12/2/98; St. Rec. Vol. 1 of 17, Sentencing Minutes (Culverson), 12/2/98; St. Rec. Vol. 1 of 17, Sentencing Minutes (Jackson), 12/2/98; St. Rec. Vol. 15 of 17, Sentencing Transcript, 12/2/98.

sentences on count two as multiple offenders.[11]  The multiple bill against Kelly was dismissed on

February 3, 1999.[12]

On direct appeal to the Louisiana Fifth Circuit, Kelly's counsel asserted the following

errors:[13] (1) the evidence was insufficient to support the verdict; (2) the state trial court erred when

it allowed into evidence written statements of two witnesses, Travis Robinson and Donald Collins;

(3) the sentences imposed are excessive; (4) the state trial court erred by permitting into evidence

photographs of a red-looking automobile; and (5) the state trial court erred when it denied a

continuance based on an unavailable witness.

On March 15, 2001, the Louisiana Fifth Circuit affirmed the consolidated appeals of Kelly,

Culverson, and Jackson.[14]  Specifically, the Court found no merit in any of Kelly's claims, or those

of his co-defendants.[15]

Kelly's conviction became final under federal law thirty (30) days later, on Monday, April

16, 2001,[16] because he did not file for rehearing or seek review in the Louisiana Supreme Court.

---

[11]St. Rec. Vol. 1 of 17, Sentencing Minutes (Culverson), 3/3/99; Multiple Bill (Culverson), 12/2/98; Multiple Bill (Jackson), 12/2/98; St. Rec. Vol. 2 of 17, Sentencing Minute (Jackson), 4/14/99; St. Rec. Vol. 15 of 17, Sentencing Transcript, 3/3/99.

[12]St. Rec. Vol. 1 of 17, Multiple Bill (Kelly), 12/2/98 (dismissal noted 2/3/99).

[13]*Jackson*, 783 So.2d at 482; St. Rec. Vol. 3 of 17, 5th Cir. Opinion, 00-KA-221 c/w 00-KA-222 c/w 00-KA-223, 3/15/01.

[14]*Jackson*, 783 So.2d at 482; St. Rec. Vol. 3 of 17, 5th Cir. Opinion, 00-KA-221 c/w 00-KA-222 c/w 00-KA-223, 3/15/01; St. Rec. Vol. 15 of 17, 5th Cir. Order, 00-KA-221 c/w 00-KA-222 c/w 00-KA-223, 3/3/00.

[15]The Court also directed that the state trial court issue a corrected notice to the defendants regarding their post-conviction rights and limitations period.  The state trial court complied on March 21, 2001.  St. Rec. Vol. 3 of 17, Notice of Prescriptive Period, 3/21/01.

[16]The thirtieth day was Saturday, April 14, 2001.  The deadline therefore fell to the next business day, Monday, April 16, 2001.  *See* La. Code Crim. P. art. 13 (weekends and holidays not included in calculation when it would be the last day of the period); Fed. R. Civ. P. 6.

*Butler v. Cain*, 533 F.3d 314, 317 (5th Cir. 2008) (citing *Roberts v. Cockrell*, 319 F.3d 690, 693 (5th Cir. 2003) (appeal is final when the state defendant does not timely proceed to the next available step in an appeal process).

On April 20, 2001, Kelly signed and untimely[17] submitted a writ application to the Louisiana Supreme Court, which the Court denied without stated reasons on May 9, 2003.[18]

Almost twenty-one months later, on May 2, 2005, Kelly signed and submitted to the state trial court an application for post-conviction relief asserting the following grounds for relief:[19] (1) the state trial court failed to exclude unreliable opinion evidence which denied him a fair trial; (2) the state trial court gave an improper jury charge on second degree murder at the beginning of the proceedings; (3) he was denied effective assistance when trial counsel failed to move for mistrial when the prosecutor vouched for the credibility of the victim and a witness, failed to file a motion to quash based on double jeopardy, erroneous jury instructions, and an insufficient description of the crime in the indictment; (4) the State failed to prove second degree murder beyond a reasonable doubt; (5) he was subject to an illegal conviction and sentence; and (6) the State was without jurisdiction to bring him to trial.

On May 18, 2005, the state trial court denied the application by procedurally barring the second claim for Kelly's failure to object at trial and failed to and could have raised the claim on

---

[17]La. S. Ct. Rule X§5 allows thirty days from the issuance of the appellate court's decision for a petitioner to file or mail a writ application.

[18]*State ex rel. Kelly v. State*, 843 So.2d 386 (La. 2003); St. Rec. Vol. 17 of 17, La. S. Ct. Order, 2001-KH-1285, 5/9/03; La. S. Ct. Writ Application, 01-KH-1285, 5/1/01 (dated 4/20/01); St. Rec. Vol. 3 of 17, La. S. Ct. Letter, 2001-KH-1285, 5/2/01.

[19]St. Rec. Vol. 4 of 17, Application for Post-Conviction Relief, 5/16/05 (dated 5/2/15).

direct appeal or an earlier proceeding.[20]   The Court also found that the remaining claims were meritless.

On July 1, 2005, the Louisiana Fifth Circuit denied Kelly's related writ application finding no error in the Trial Court's ruling.[21]   The Louisiana Supreme Court also denied Kelly's subsequent writ application for seeking untimely post-conviction review, citing La. Code Crim. P. art. 930.8 and *State ex rel. Glover v. State*, 660 So.2d 1189 (La. 1995).[22]

More than three years later, on November 3, 2008, Kelly signed and submitted a writ application to the Louisiana Supreme Court seeking relief in accordance with that Court's holding in *State v. Cordero*, 993 So.2d 203 (La. 2008).[23]   On April 24, 2009, the Court transferred to the writ application to the Louisiana Fifth Circuit for further consideration.[24]

On February 24, 2010, pursuant to *Cordero*, the Louisiana Fifth Circuit reviewed Kelly's 2005 *pro se* writ application.[25]   The Court denied relief finding that, because the underlying application for post-conviction relief filed in the state trial court on May 16, 2005, was untimely

---

[20]St. Rec. Vol. 3 of 17, Trial Court Order, 5/18/05.

[21]St. Rec. Vol. 16 of 17, 5th Cir. Order, 7/1/05; 5th Cir. Writ Application, 05-KH-657, 6/27/05 (dated 6/22/05).  The writ application was timely filed.  St. Rec. Vol. 3 of 17, Trial Court Order, 6/21/05; Notice of Intent, 6/13/05.

[22]*State ex rel. Kelly v. State*, 930 So.2d 11 (La. 2006); St. Rec. Vol. 17 of 17, La. S. Ct. Order, 2005-KH-2184, 5/26/06; La. S. Ct. Writ Application, 05-KH-2184, 8/19/05 (dated 7/20/05); St. Rec. Vol. 16 of 17, La. S. Ct. Letter, 2005-KH-2184, 8/19/05.

[23]**Error! Main Document Only.**St. Rec. Vol. 17 of 17, La. S. Ct. Writ Application, 08-KH-2796, 11/26/08 (dated 11/3/08).  In *Cordero*, the Louisiana Supreme Court addressed accusations that, between 1994 and 2007, the Louisiana Fifth Circuit issued summary dismissals without judicial review of *pro se* post-conviction writ applications.

[24]*State ex rel. Kelly v. State*, 7 So.3d 1218 (La. 2009); St. Rec. Vol. 17 of 17, La. S. Ct. Order, 2008-KH-2796, 4/24/09.

[25]St. Rec. Vol. 17 of 17, 5th Cir. Order, 09-WR-495, 2/24/10.

under La. Code Crim. P. art. 930.8, the denial of relief was proper.  On March 25, 2011, the Louisiana Supreme Court denied Kelly's subsequent writ application without stated reasons.[26]

Over two years later, on May 23, 2013, Kelly signed and submitted to the state trial court another application for post-conviction relief asserting that the State allowed Derrick Dunbar to testify falsely about his prior convictions and withheld evidence that Dunbar faced a rule to revoke his probation which information could have been used for impeachment.[27]  Kelly also asserted that he was denied effective assistance of counsel because counsel failed to investigate the witnesses' criminal backgrounds to show that they had reason to testify falsely.

On July 11, 2013, the state trial court denied Kelly's application for post-conviction relief. The trial court found that Kelly failed to meet any exception to the prescriptive period under La. Code Crim. P. art. 930.8 and that the information Kelly claimed to be newly discovered, specifically information regarding Dunbar's criminal proceedings and rule to revoke, was "readily available for review in the court records."[28]

On August 22, 2013, Kelly signed and submitted an untimely writ application to the Louisiana Fifth Circuit in which he asserted that the state trial court erred in denying his application without an evidentiary hearing and re-urged that the State failed to turn over the impeachment evidence.  He also claimed he was not able to print the information from a computer until September 6, 2012.[29].  On October 9, 2013, the Louisiana Fifth Circuit denied Kelly's finding no

---

[26]*State ex rel. Kelly v. State*, 61 So.3d 658 (La. 2011); St. Rec. Vol. 17 of 17, La. S. Ct. Order, 2010-KH-0693, 3/25/11; La. S. Ct. Writ Application, 10-KH-0693, 3/25/10 (dated 3/22/10).

[27]St. Rec. Vol. 8 of 17, Application for Post-Conviction Relief, 5/28/13 (dated 5/23/13).

[28]St. Rec. Vol. 8 of 17, Trial Court Order, 7/11/13.

[29]St. Rec. Vol. 17 of 17, 5th Cir. Writ Application, 13-KH-726, 8/28/13 (dated 8/22/13).

error in the state trial court's ruling that Kelly's application was untimely and no exception to that rule was met.[30]

On July 31, 2014, citing La. Code Crim. P. art. 930.8 and *State ex rel. Glover*, the Louisiana Supreme Court also denied Kelly's related writ application in which he asserted the same arguments that were before the appellate court.[31]

Following the July 1, 2015, stay of his federal petition for habeas relief, Kelly signed and submitted to the state trial court an application for post-conviction relief in which he reasserted his claim that the State withheld impeachment evidence that Dunbar was threatened and encouraged to give false testimony based on the Dunbar affidavit.[32]  The State filed an opposition asserting that the application was barred as successive under La. Code Crim. P. art. 930.4(D) and (E) and untimely under La. Code Crim. P. art. 930.8 and that Kelly failed to meet his burden of proving diligence or any exception to the prescriptive bar.[33]  In the alternative, the State argued that the claim lacked merit on several grounds, including the lack of authenticity of the Dunbar affidavit and the state courts' prior findings in proceedings by Kelly's co-defendants that the affidavit is not credible and does not contradict the witness's trial testimony.  The State also argued the suspect nature of the affidavit as one in a long line of solicited affidavits sought out by the co-defendant Jackson.  In addition, the State argued that Dunbar's initial identification of Kelly as a suspect was

---

[30]St. Rec. Vol. 8 of 17, 5th Cir. Order, 13-KH-726, 10/9/13.

[31]*State ex rel. Kelly v. State*, 146 So.3d 543 (La. 2014); St. Rec. Vol. 17 of 17, La. S. Ct. Order, 2013-KH-2670, 7/31/14; La. S. Ct. Writ Application, 13-KH-2670, 11/15/13 (dated 11/8/13).

[32]St. Rec. Suppl. Vol. 1 of 7, Application for Post-Conviction Relief, 11/12/15 (dated 11/9/15).

[33]St. Rec. Suppl. Vol. 1 of 7, State's Opposition, 3/9/16.

made during the police investigations before Kelly's arrest and long before any involvement by a prosecutor.

On March 17, 2016, the state trial court denied the application finding that it was untimely under La. Code Crim. P. art. 930.8, and that Kelly failed to prove an exception to that rule.[34] Alternatively, the Court noted that the affidavit, which had already been reviewed in connection with co-defendant Culverson's application for post-conviction relief, did not actually contradict the testimony of Dunbar. The Court noted instead that the "recantations" in the affidavit related to the trial testimony of another witness, Travis Robinson, and not any statements made by Dunbar. The Court found no credibility in the affidavit and that Kelly failed to establish his entitlement to relief.

On May 25, 2016, the Louisiana Fifth Circuit denied Kelly's related writ application finding that the affidavit did not conflict with Dunbar's trial testimony and that Kelly failed to overcome the time limitations under La. Code Crim. P. art. 930.8.[35] On October 9, 2017, the Louisiana Supreme Court also denied Kelly's subsequent writ application finding no error in the state trial court's ruling.[36]

## III.    Federal Petition

On October 16, 2014, the clerk of this Court filed Kelly's federal petition for habeas corpus relief in which he asserted that evidence obtained September 6, 2012, revealed that the State

---

[34]St. Rec. Suppl. Vol. 2 of 7, Trial Court Order, 3/17/16.

[35]St. Rec. Suppl. Vol. 3 of 7, 5th Cir. Order, 16-KH-241, 5/25/16; 5th Cir. Writ Application, 16-KH-241, 4/22/16 (dated 4/18/16).

[36]*State ex rel. Kelly v. State*, 227 So.3d 795 (La. 2017); St. Rec. Suppl. Vol. 5 of 7, La. S. Ct. Order, 2016-KH-1233, 10/9/17; La. S. Ct. Writ Application, 16-KH-1233, 6/29/16 (dated 6/23/16); St. Rec. Suppl. Vol. 2 of 7, La. S. Ct. Letter, 201-KH-1233, 6/30/16.

encouraged perjured testimony and withheld impeachment evidence that demonstrated a promise of leniency to a key witness; Derrick Dunbar.[37]

The State filed a response in opposition to Kelly's federal habeas petition asserting that the petition was not timely filed and that the information obtained by Kelly was not new evidence to constitute a new trigger for the federal limitations period.[38]  The State further argues that the claim is in procedural default having been barred from review as untimely by the state courts.

Kelly responded to the State's opposition urging the Court to consider cause for his procedural default through the newly discovered evidence exception.[39]  Kelly also filed a motion to stay which was granted by the Court to allow him to exhaust state court review of the November 26, 2014, affidavit of Dunbar.[40]

Upon order of the Court after reopening of the case, Kelly filed a supplemental brief reiterating his assertion that the Dunbar affidavit acted as newly discovered evidence to prove his claim that the State encouraged perjury and withheld impeachment evidence regarding a critical witness.[41]

In its reply and supplemental opposition memorandum, the State urges the Court to take notice of the disposition of co-defendant Culverson's almost identical arguments in his federal habeas corpus petition, Civ. Action 17-7759"A"(5), in which another section of this Court has

---

[37]Rec. Doc. No. 3, p. 29.

[38]Rec. Doc. No. 14.

[39]Rec. Doc. No. 13.

[40]Rec. Doc. Nos. 13, 16, 17.

[41]Rec. Doc. No. 26.

recommended dismissal of the petition with prejudice as time-barred and alternatively, as procedurally defaulted.[42]    The State argues that similarly, Kelly's federal petition is time-barred and the Dunbar affidavit is not credible or constitute newly discovered evidence to alter the limitations calculation.    Additionally, the State asserts that the claim, even with the Dunbar affidavit, is in procedural default.

## IV.    <u>General Standards of Review</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[43] applies to this petition, which is deemed filed in this Court no later than October 2, 2014.[44]    The threshold questions on habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim.    *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

---

[42]Rec. Doc. No. 29.

[43]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996.  *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).  The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[44]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting *pro se*.  Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995).  The clerk of court filed Kelly's petition on October 16, 2014, when the filing fee was paid.  The official stamp from the prison legal department indicates that the pleadings were received from Kelly on October 2, 2014, for electronic mailing that same day to this federal court for filing.  The fact that he paid the filing fee does not alter the application of the federal mailbox rule to his *pro se* petition.  *See Cousin v. Lensing*, 310 F.3d 843, 847 (5th Cir. 2002).

The State concedes that Kelly has exhausted state court review of the claim. However, the State asserts that the petition was not timely filed under the AEDPA and alternatively, the claim is in procedural default, reserving the right to assert other procedural objections and address the merits if necessary. While both defenses are supported by the record, for the reasons that follow, the Court finds that, because Kelly's federal habeas petition was not timely filed, it must be dismissed with prejudice for that reason.

## V.    Statute of Limitations

The AEDPA requires a petitioner to bring his § 2254 claim within one year of the date his conviction became final or one year from the date on which the factual predicate of the claim could have been discovered through the exercise of due diligence.[45]  *Duncan v. Walker*, 533 U.S. 167, 176-80 (2001); *Manning v. Epps*, 688 F.3d 177, 189-90 (5th Cir.2012).  Kelly argues that the latter provision applies to his case because of the discovery of "new evidence" of alleged pressure placed on Dunbar to testify and his subsequent affidavit.

---

[45]The statute of limitations provision of the AEDPA under 28 U.S.C. § 2244(d) provides for other triggers which do not apply here:

    (1)  A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of-

        A.    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

        B.    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State actions;

        C.    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

        D.    the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

    (2)  The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

### A.    No Alternative Trigger or Exception

Broadly construed, Kelly asserts that as early as 2009, he discovered that the State withheld information that would show that threats of a parole revocation were made to Dunbar to secure his testimony, which testimony was damning to his defense.  Kelly contends that he has obtained a copy of a 2014 affidavit from Dunbar in which Dunbar purportedly recants his trial testimony.  Thus, he argues, the "new factual predicate" of his claims would be that Dunbar purportedly lied during his trial testimony because he was threatened, and the State failed to reveal the threats made to prosecute him.  Kelly asserts that his petition is timely under the AEDPA, because these matters act as new predicates for commencing the AEDPA one year limitations period or conflict with the most critical testimony at trial.

The State opposes Kelly's argument on the grounds that Dunbar was questioned by defense counsel at trial about his trepidations to testify, and the information Kelly retrieved in 2009 was previously available in the state court records.  The State argues that the state courts have already held that Kelly failed to meet any exception to the limitations period for state post-conviction review under La. Code Crim. P. art. 930.8. In addition, the State argues that the Dunbar affidavit does not alter the fact that Dunbar identified Kelly to police long before there was a case to be prosecuted.  Further, the purported affidavit was not credible in form and, as resolved by the state courts, the affidavit did not actually recant or address Dunbar's testimony but instead the testimony of another witness.

### 1.    No New Factual Predicate

Under § 2244(d)(1)(D), the AEDPA limitations period commences upon the discovery of the factual predicate of the claim when the factual predicate could not have been discovered earlier through the exercise of due diligence.  This subsection does not delay the commencement of the

limitations period until the date on which the factual predicate of a claim was in fact discovered or developed; rather, it delays it only until the date on which it "could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D); *see Manning*, 688 F.3d at 189-90 (argument that § 2244(d)(1)(D) runs from actual discovery of claim is an "untenable theory."); *Owens v. Boyd*, 235 F.3d 356, 359 (7th Cir. 2000) (". . . the time commences when the factual predicate 'could have been discovered through the exercise of due diligence,' not when it was actually discovered by a given prisoner . . . [and] not when the prisoner recognizes their legal significance."). The United States Fifth Circuit has held "that this means the date a petitioner is on notice of the facts which would support a claim, not the date on which the petitioner has in his possession evidence to support his claim." *In re Young*, 789 F.3d 518, 528 (5th Cir. 2015) (citing *Flanagan v. Johnson*, 154 F.3d 196, 199 (5th Cir. 1998)); *see also Hunter v. Cain*, 478 F. App'x 852 (5th Cir. 2012) (citing *Starns v. Andrews*, 524 F.3d 612, 620–21 & n. 5 (5th Cir. 2008) (holding that the relevant date under § 2244(d)(1)(D) is the date that the *habeas* petitioner or his criminal attorney received the information in question)).

Thus, contrary to Kelly's arguments, the commencement date under this subsection would not begin after 2009 when he claims he gained access to the memorandum related to Dunbar's revocation proceedings or 2014 when he obtained the Dunbar affidavit. Rather, this provision would run from the date on which he could have discovered the factual basis for his claim through the exercise of due diligence. Thus, Kelly's limitations period would run not from the date on which Dunbar signed the affidavit or the date on which petitioner in fact obtained the affidavit or the memorandum regarding the parole revocation, but rather from the date on which Kelly could have discovered these facts through the exercise of due diligence.

As asserted by the State, the record reflects that Kelly was aware at the time of his trial that Dunbar claimed that he had been threatened. For example, at trial, Dunbar was questioned about statements he made during a pretrial interview with co-defendant Culverson's attorney. During that interview, Dunbar stated that he lied to the Kenner Police, because Detective Cunningham was harassing him and threatened to throw him in jail on trumped up charges.[46] In fact, Culverson's attorney cross-examined Dunbar who testified that he was in jail when he was interviewed by the attorney and that the charges against him were dropped right after Dunbar testified to the grand jury.[47] In addition, much of Dunbar's testimony on direct and on cross-examination was focused on his persistent lies and story changes during the months before and at trial.[48]

Thus, the record establishes that, both before and during Kelly's trial, Dunbar made known his proclivity to lie and his motivations for lying, which included his claims of threats and manipulated charges against him. Kelly simply has not demonstrated that he could not have discovered with the exercise of due diligence the information about Dunbar's lies and alleged threats to Dunbar as motivation for his trial testimony.[49]

---

[46]St. Rec. Vol. 11 of 17, Trial Transcript, pp. 229-230, 11/3/98; St. Rec. Vol. 12 of 17, Trial Transcript (continued), pp. 235-242, 11/3/98.

[47]St. Rec. Vol. 12 of 17, Trial Transcript (continued), p. 243, 11/3/98.

[48]These references are made throughout Dunbar's lengthy trial testimony and cross-examination.

[49]As noted by the State, another division of this Court has determined that Kelly's co-defendant, Culverson, claimed that Dunbar recanted his testimony in an affidavit as early as 2006, which means that with diligence, Kelly also could have discovered any question about Dunbar's veracity over a decade before he claims to have done so. *See*, *Culverson v. Vannoy*, Civ. Action No. 17-7759"A"(5), Rec. Doc. No. 17 (adopted Rec. Doc. Nos. 18, 19).

For these reasons, Kelly has failed to establish that he was not aware of a basis to question Dunbar's credibility before or at the time of trial. He also has not demonstrated that he could not have discovered a basis to challenge Dunbar's credibility (or obtain an affidavit) with due diligence prior to the expiration of the AEDPA limitations or certainly prior to the filing of his third state application for post-conviction relief.

### 2.    No Actual Innocence Exception

To the extent Kelly arguably makes such a claim, he has failed to prove that the Dunbar information and affidavit tend to establish his actual innocence to create an exception to the AEDPA's limitations provision. To the contrary, even if the affidavit could be believed, it purports to establish the existence of credibility concerns and conflicting evidence from one witness, not a basis for a claim of actual innocence. *See Bosley v. Cain*, 409 F.3d 657, 665 (5th Cir. 2005). The affidavit does not establish Kelly's actual innocence or that it is more likely than not that *no* reasonable juror would have convicted him in light of the "new evidence." *Schlup v. Delo*, 513 U.S. 298, 324, 327 (1995).

In *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013), the United States Supreme Court held that "actual innocence, if proved, serves as a gateway through which a petitioner may pass . . . [to excuse] the expiration of the statute of limitations." The Supreme Court has cautioned, however, that "tenable actual-innocence gateway pleas are rare[.]" *Id.* To succeed on this claim, a petitioner must present a credible claim of actual innocence based on "new reliable evidence ... that was not presented at trial," and he "must show that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt" in light of that new evidence of his factual innocence. *Schlup*, 513 U.S. at 327.

The state courts held that the Dunbar affidavit of 2014 is less than credible, and this Court agrees. As noted by the State, the document is not properly constructed or paginated as an affidavit should be, where it has no witnesses to the affiant's declaration and no notarial affirmation on the page bearing the Dunbar signature, and vice versa. This lends little if no credence to the authenticity and credibility of the document.

Most relevant, the content of the "recounting" within the affidavit is not related to Dunbar's trial testimony. As demonstrated by the record and found by the state courts, Dunbar did not testify about the gun and a map referenced in the affidavit. Instead, that particular testimony came from another witness, Travis Robinson, who has <u>not</u> recanted his testimony.[50] In addition, the content of Dunbar's affidavit related to his alleged fears and threats of prosecution are not inconsistent with his trial testimony, as already discussed above in this Report.

Similarly, the affidavit fails to speak to the fact that Dunbar identified Kelly and the co-defendants as the perpetrators to Detective Cunningham during the police investigation stage, long before any arrests and long before a prosecutor could have had any influence, or threats as alleged, on his trial testimony. The state courts' findings on these matters are reasonable, supported by the record, and given deference by this Court.

For these reasons, the Court does not find that Kelly has demonstrated an alternative trigger to the start of the one-year AEDPA limitations period which generally commences one-year after finality of the petitioner's conviction. For the reasons determined previously, the affidavit does not contain "new evidence" that was not available to Kelly at the time of trial. The affidavit also

---

[50]St. Rec. Vol. 12 of 17, Trial Transcript (Travis Robinson), pp. 124-125, 159, 169, 208, 11/3/98.

lacks the credibility and evidence of actual innocence necessary to stand as support for Kelly's claims or create an exception to the one-year AEDPA filing period.

### B.    AEDPA Limitations Period from Finality of the Conviction

With no alternative commencement for the AEDPA one-year limitations period, Kelly's federal petition is deemed untimely under § 2244(d)(1)(A), having been filed more than one year after his conviction was final. As stated above, Kelly's conviction was final under federal law on April 16, 2001, following his direct appeal. Pursuant to § 2244(d)(1)(A), Kelly had one year from that date, or until April 16, 2002, to timely file a federal application for habeas corpus relief which he did not do. Thus, literal application of the statute would bar Kelly's petition as of that date unless he is entitled to tolling as provided for under the AEDPA.

#### 1.    Statutory Tolling

Section 2244(d)(2) provides that the time during which a properly filed application for state post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation. *See* 28 U.S.C. § 2244(d)(2). In order for a state post-conviction application to be considered "properly filed" within the meaning of § 2244(d)(2), the applicant must have complied with all of the State's procedural requirements, such as timeliness and place of filing. *Pace v. DiGuglielmo*, 544 U.S. 408, 413-14 (2005); *Williams v. Cain*, 217 F.3d 303, 306-08 & n.4 (5th Cir. 2000) (quoting *Smith v. Ward*, 209 F.3d 383, 384-85 (5th Cir. 2000)); *Villegas v. Johnson*, 184 F.3d 467, 468-69 (5th Cir. 1999), *reh'g denied*, 196 F.3d 1259 (5th Cir. 1999). For purposes of the AEDPA, a timeliness calculation in Louisiana requires the application of the prison mailbox rule to state pleadings. *Causey v. Cain*, 450 F.3d 601, 604-05 (5th Cir. 2006). The Court has applied this rule in presenting the procedural history recited above.

A matter is "pending" for § 2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.'" *Carey v. Saffold*, 536 U.S. 214, 219-20 (2002); *Williams*, 217 F.3d at 310 (quoting *Bennett v. Artuz*, 199 F.3d 116, 120 (2d Cir. 1999)) (finding that a matter is "pending" for Section 2244(d)(2) purposes until further appellate review is unavailable under Louisiana's procedures.); *see also Melancon v. Kaylo*, 259 F.3d 401, 405 (5th Cir. 2001).

The phrase "other collateral review" in the statute refers to state court proceedings challenging the pertinent judgment subsequently challenged in the federal habeas petition. *Dillworth v. Johnson*, 215 F.3d 497, 501 (5th Cir. 2000) (finding that a state habeas petition challenging a prior conviction in one county was other collateral review even though filed as a challenge to a second conviction in a different county); *Nara v. Frank*, 264 F.3d 310, 316 (3d Cir. 2001), *overruled on other grounds by Carey*, 536 U.S. 214 (finding that a motion to withdraw a guilty plea is "other collateral review").  A "pertinent judgment or claim" requires that the state filings for which tolling is sought must have challenged the same conviction being challenged in the federal habeas corpus petition and must have addressed the same substantive claims now being raised in the federal habeas corpus petition.  *Godfrey v. Dretke*, 396 F.3d 681, 687-88 (5th Cir. 2005).

In Kelly's case, the AEDPA filing period began to run on April 17, 2001, the day after his conviction and sentence were final under federal law.  The one-year AEDPA filing period continued to run uninterrupted from that date for one year, until April 17, 2002, when it expired. Kelly had <u>no</u> properly filed application for state post-conviction or other collateral review pending in any state court during that time period.  His current federal petition was filed under the federal mailbox rule on October 16, 2014, and therefore was not timely under the AEDPA.

Kelly did not pursue state post-conviction review until May 2, 2005, which was more than three years after the AEDPA filing period expired on April 17, 2002. A filing made after the expiration of the AEDPA one-year filing period does not renew or extend the AEDPA filing period or provide a petitioner any tolling benefits. *See Scott v. Johnson*, 227 F.3d 260, 263 (5th Cir. 2000); *Higginbotham v. King*, 592 F. App'x 313, 314 (5th Cir. 2015).

Thus, Kelly's current federal petition deemed filed on October 16, 2014, was filed more than twelve years and six months after the AEDPA filing period expired on April 17, 2002. Kelly's federal petition was not timely filed and should be dismissed with prejudice for that reason.

### 2.    No Equitable Tolling

The post-AEDPA jurisprudence also provides for equitable tolling where rare or extraordinary circumstances may have prevented a diligent petitioner from timely pursuing federal habeas corpus. *Pace*, 544 U.S. at 419; *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999), *cert. denied*, 531 U.S. 1164 (2001); *Cantu-Tzin v. Johnson*, 162 F.3d 295, 299 (5th Cir. 1998); *Davis v. Johnson*, 158 F.3d 806, 810-11 (5th Cir. 1998), *cert. denied*, 526 U.S. 1074 (1999). Equitable tolling is warranted only in situations where the petitioner was actively misled or is prevented in some extraordinary way from asserting his rights. *Pace*, 544 U.S. at 418-19; *see Cousin v. Lensing*, 310 F.3d 843, 848 (5th Cir. 2002).

Equitable tolling has only been extended under extraordinary circumstances outside the control of the petitioner. *See Holland v. Florida*, 560 U.S. 631, 652-53 (2010) (finding that equitable tolling was warranted where attorney was more than negligent when he failed to satisfy professional standards of care by ignoring the client's requests to timely file a federal petition and in failing to communicate with the client over a period of years in spite of the client's letters); *Hardy v. Quarterman*, 577 F.3d 596, 599-600 (5th Cir. 2009) (finding that equitable tolling was

warranted where petitioner suffered a significant state-created delay when, for nearly one year, the state appeals court failed in its duty under Texas law to inform him that his state habeas petition had been denied, petitioner diligently pursued federal habeas relief, and he persistently inquired to the court.); *United States v. Wynn*, 292 F.3d 226, 230 (5th Cir. 2002) (finding that tolling was warranted when defendant was deceived by attorney into believing that a timely motion to vacate was filed); *Coleman v. Johnson*, 184 F.3d 398, 402 (5th Cir. 1999) (quotation omitted) ("A garden variety claim of excusable neglect does not support equitable tolling."); *Fisher*, 174 F.3d at 715 (finding that tolling is not justified during petitioner's 17-day stay in psychiatric ward, during which he was confined, medicated, separated from his glasses and thus rendered legally blind, and denied meaningful access to the courts); *Cantu-Tzin*, 162 F.3d at 300 (finding that State's alleged failure to appoint competent habeas counsel did not justify tolling); *Davis*, 158 F.3d at 808 n.2 (assuming without deciding that equitable tolling was warranted when federal district court three times extended the deadline to file habeas corpus petition beyond expiration of AEDPA grace period).

Kelly has not presented, and the record does not demonstrate, any basis for extending the extraordinary remedy of equitable tolling to the § 2244(d) calculation. The record instead simply reflects that Kelly did not timely file this federal habeas petition, and he is not entitled to equitable tolling.

### C.    No Relief Available Under *Martinez*

Should Kelly choose to respond to this report, he has no other grounds to excuse his untimely federal petition based on the United States Supreme Court's holdings in *Martinez v. Ryan*, 566 U.S. 1 (2012) and *Trevino v. Thaler*, 569 U.S. 413 (2013). Neither case provides a basis for review of this untimely filed federal petition. In *Martinez*, the Court held that a <u>state</u> court

imposed "'procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the [State's] initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.'" *Trevino*, 569 U.S. at 417 (quoting *Martinez*, 566 U.S. at 17) (emphasis added).  The bar to review at issue here arises from Kelly's failure to meet the federal limitations deadline under the AEDPA.  The *Martinez* and *Trevino* decisions do not address or provide an excuse for the untimely filing of a federal habeas petition. *See*, *Arthur v. Thomas*, 739 F.3d 611, 631 (11th Cir. 2014) ("Thus, we also hold that the reasoning of the *Martinez* rule does not apply to AEDPA's limitations period in § 2254 cases or any potential tolling of that period."); *Smith v. Rogers*, No. 14-0482, 2014 WL 2972884, at * 1 (W.D. La. Jul. 2, 2014); *Falls v. Cain*, No. 13-5091, 2014 WL 2702380, at *3 (E.D. La. Jun.13, 2014) (Order adopting Report).  These cases also do not constitute new rules of constitutional law made retroactive on collateral review that would start a new one-year filing period under the AEDPA. *See*, *In re Paredes*, 587 F. App'x 805, 813 (5th Cir. 2014) (". . . the Supreme Court has not made either *Martinez* or *Trevino* retroactive to cases on collateral review, within the meaning of 28 U.S.C. § 2244."); *Adams v. Thaler*, 679 F.3d 312, 322 n.6 (5th Cir. 2012).

For these reasons, neither *Martinez* nor *Trevino* provide Kelly a basis for relief from his failure to meet the AEDPA's limitations period.  His untimely federal petition must be dismissed.

## VI.  <u>Recommendation</u>

For the foregoing reasons, it is **RECOMMENDED** that Samuel Kelly's petition for issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE** as time-barred.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days**

after being served with a copy shall bar that party, except upon grounds of plain error, from

attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by

the district court, provided that the party has been served with notice that such consequences will

result from a failure to object. *Douglass v. United Servs. Auto. Assoc.*, 79 F.3d 1415, 1430 (5th

Cir. 1996).[51]

New Orleans, Louisiana, this  21st   day of September, 2018.

_____

**KAREN WELLS ROBY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

---

[51]*Douglass* referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.